1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDREW RAMIREZ,

11                 Plaintiff,                    No. 2: 11-cv-0045 KJN P

12          vs.

13   D. SWINGLE, et al.,                    ORDER AND

14                 Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action

18   pursuant to 42 U.S.C. § 1983.  Pending before the court are plaintiff's motions for injunctive

19   relief filed October 5, 2011, and January 20, 2012.  On February 24, 2012, defendants filed an

20   opposition to these pending motions.  On June 22, 2012, defendants were ordered to file further

21   briefing.  On July 20, 2012 defendants filed a summary judgment motion addressing the issues

22   requiring further briefing.

23          For the following reasons, the undersigned recommends that plaintiff's motions

24   for injunctive relief be denied.

25   ////

26   ////

1

II.  <u>Legal Standard for Injunctive Relief</u>

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, 129 S. Ct. 365, 374 (2008).

A Ninth Circuit panel has found that post-<u>Winter</u>, this circuit's sliding scale approach or "serious questions" test survives "when applied as part of the four-element *Winter* test." <u>Alliance for Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131-1132 (9th Cir. 2011).  "In other words, 'serious questions going to the merits,' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met."  <u>Id.</u> at 1132.

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

III.  <u>Analysis</u>

This action is proceeding on the original complaint filed January 5, 2011, as to defendants Physician's Assistant Medina and Chief Medical Officer Swingle.  Plaintiff alleges that defendants mismanaged his insulin, refused to provide physical therapy and improperly lowered the dosage of his pain medication.

In both pending motions for injunctive relief, plaintiff requests that defendants be ordered to provide him with morphine or else to supplement or replace his discontinued tramadol and gabapentin.  Plaintiff also requests that defendants be ordered to provide him with adequate doses of insulin.  Defendants were ordered to respond to those requests.

////

1          *Legal Standard for Eighth Amendment Claim*

2          Generally, deliberate indifference to a serious medical need presents a cognizable

3    claim for a violation of the Eighth Amendment's prohibition against cruel and unusual

4    punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  According to Farmer v. Brennan, 511

5    U.S. 825, 847 (1994), "deliberate indifference" to a serious medical need exists "if [the prison

6    official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that

7    risk by failing to take reasonable measures to abate it."  The deliberate indifference standard "is

8    less stringent in cases involving a prisoner's medical needs than in other cases involving harm to

9    incarcerated individuals because 'the State's responsibility to provide inmates with medical care

10   ordinarily does not conflict with competing administrative concerns.'"  McGuckin v. Smith, 974

11   F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled

12   on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

13   Specifically, a determination of "deliberate indifference" involves two elements:  (1) the

14   seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to

15   those needs.  McGuckin, 974 F.2d at 1059.

16          First, a "serious" medical need exists if the failure to treat a prisoner's condition

17   could result in further significant injury or the "unnecessary and wanton infliction of pain."  Id.

18   (citing Estelle, 429 U.S. at 104).  Examples of instances where a prisoner has a "serious" need for

19   medical attention include the existence of an injury that a reasonable doctor or patient would find

20   important and worthy of comment or treatment; the presence of a medical condition that

21   significantly affects an individual's daily activities; or the existence of chronic and substantial

22   pain.  McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41

23   (9th Cir. 1990)).

24          Second, the nature of a defendant's responses must be such that the defendant

25   purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for

26   "deliberate indifference" to be established.  McGuckin, 974 F.2d at 1060.  Deliberate

1   indifference may occur when prison officials deny, delay, or intentionally interfere with medical

2   treatment, or may be shown by the way in which prison physicians provide medical care.

3   Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988).  In order for deliberate

4   indifference to be established, there must first be a purposeful act or failure to act on the part of

5   the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060.  "A defendant must

6   purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for

7   deliberate indifference to be established."  Id.  Second, there must be a resulting harm from the

8   defendant's activities.  Id.  The needless suffering of pain may be sufficient to demonstrate

9   further harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

10          Mere differences of opinion concerning the appropriate treatment cannot be the

11   basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996);

12   Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  However, a physician need not fail to

13   treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v.

14   City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious

15   medical condition, even if some treatment is prescribed, may constitute deliberate indifference in

16   a particular case.  Id.

17                  *Defendants' Evidence Regarding Pain Medication*

18          Attached to defendants' summary judgment motion is a 32- page declaration by

19   defendant Swingle discussing, in part, the issues of plaintiff's pain medication and insulin

20   dosage.  (Dkt. No. 53-3.)  The undersigned has reviewed this declaration.

21          Defendants Swingle states that for several years, plaintiff has had problems with

22   ongoing pain caused by an incisional ventral hernia.  Plaintiff has been prescribed a variety of

23   different medications for this condition, including tramadol, gabapentin and morphine.

24          Plaintiff began receiving gabapentin and tramadol for pain upon his arrival at

25   High Desert State Prison ("HDSP"), where defendants are located, in March 2009.  In May 2010,

26   plaintiff was also prescribed morphine for pain.

4

1    In November 2010, the tramadol was discontinued because it was not mitigating

2 plaintiff's pain.  In January 2011, plaintiff was tapered off the gabapentin because it was not

3 mitigating his pain.  In addition, it was determined that plaintiff did not have the type of pain that

4 gabapentin was used to treat.

5    In February 2011, plaintiff's morphine was discontinued because it caused him

6 significant constipation.  In addition, because morphine can cause slow, shallow, irregular

7 breathing, it must be used with caution and not long-term with patients, like plaintiff, who have

8 obstructive sleep apnea.  In February 2011, plaintiff was prescribed acetaminophen and naproxen

9 for pain.

10    In July 2011, plaintiff was prescribed Tylenol # 3 and acetaminophen for pain.

11    Most recently, on June 7, 2012, Dr. Mayes saw plaintiff.  Dr. Mayes noted that

12 plaintiff was awaiting a further surgical evaluation for his ventral hernias at the University of

13 California-Davis Medical Center.  Dr. Mayes noted that plaintiff had two hernias which were

14 unchanged in size from the previous visit, his associated pain was controlled with Tylenol # 3,

15 and that he needed a refill for his medications.  Dr. Mayes noted that plaintiff ambulated using a

16 wheelchair because he felt there was a risk his hernias would rupture.  Dr. Mayes re-sent his

17 request for a surgical evaluation and renewed the order for Tylenol # 3.

18    On June 13, 2012, plaintiff was seen by telemedicine by Dr. Rembetski for

19 surgical evaluation.  Plaintiff reported occasional pain, that he tried to be active, but that even

20 wandering around his cell caused discomfort.  An examination of telemedicine camera by a nurse

21 showed a large incisional hernia with a diffuse bulge at plaintiff's midline scar.  Dr. Rembetski

22 found that plaintiff seemed to be only modestly inconvenienced by the hernia, that it had been

23 fixed multiple times, and that there was a significant risk of recurrence.  Dr. Rembetski told

24 plaintiff that an abdominal binder to hold the hernia in and analgesics for pain would be the

25 appropriate treatment.  Dr. Rembetski's opinion was that this was adequate treatment because his

26 medication controlled pain and his activity level was low.  Dr. Rembetski noted that if plaintiff

5

1  developed obstructive symptoms, he would need exploration and repair with mesh, but there
2  would be a significant chance of recurrence.

3         On June 20, 2012, Dr. Mayes saw plaintiff for a follow-up, noted Dr. Rembetski's
4  finding that surgery was not recommended at that time, and recommended that plaintiff should be
5  managed with an abdominal binder and analgesics.  Dr. Mayes ordered an extra large abdominal
6  binder and continuation of Tylenol # 3.

7         Finally, in her declaration defendant Swingle states that at various times, plaintiff
8  has exhibited drug seeking behavior as well as behaved as though he were sharing his pain
9  medication with his cellmate.

10                    *Defendants' Evidence Regarding Diabetes*

11        Regarding plaintiff's diabetes, defendant Swingle's declaration indicates that in
12  the past, plaintiff was prescribed Lantus insulin, sliding scale regular insulin, glipizide and
13  metformin.  Plaintiff also received regular blood glucose checks.

14        In April 2011, plaintiff's blood checks showed blood glucose levels ranging from
15  75 mg. to 128 mg.  These levels do not indicate low blood glucose (hypoglycemia), which is
16  below 60 mg.  Plaintiff was informed that based on these levels, he did not need insulin.
17  Plaintiff's medical records indicate that in July 2011, plaintiff was no longer taking insulin or any
18  other diabetes treatment.  At that time, plaintiff had a hemoglobin A1C test to assess his glucose
19  level.  The test results were 5.5%, indicating excellent control, so that no diabetes medications
20  were needed.

21        On December 7, 2011, plaintiff's hemoglobin A1C was 5.9%, which indicated
22  continued excellent blood glucose control and no need for diabetes medication.  On March 1,
23  2012, plaintiff's hemoglobin A1C was 5.8%, which again indicated excellent blood glucose
24  control and no need for diabetes medication.

25  ////

26  ////

*Analysis*

Defendants' evidence indicates that, at this time, plaintiff has no medical need for any diabetes medication.  Defendants' evidence also indicates that, at this time, plaintiff's pain associated with his hernias has been addressed.  While plaintiff apparently continues to suffer from some discomfort, his pain is managed with Tylenol # 3.  Defendants' evidence indicates that plaintiff's sleep apnea precludes his long term use of morphine.   Defendants' evidence also indicates that gabapentin and tramadol were not as effective as Tylenol # 3 in treating plaintiff's pain.  Defendants' evidence indicates that, at this time, they are not acting with deliberate indifference to plaintiff's diabetes and pain associated with his hernias.

Based on defendants' evidence, the undesigned finds that plaintiff has not demonstrated that he is likely to suffer irreparable harm in the absence of injunctive relief.  The balance of equities do not tip in plaintiff's favor and an injunction is not in the public interest.  For these reasons, plaintiff's motions for injunctive relief requesting that defendants be ordered to properly manage his insulin and to reinstate his morphine or gabapentin and tramadol should be denied.

In the pending motions, plaintiff also requests that he receive breathing treatments and a permanent walker.  This action is not proceeding on claims regarding breathing treatments and access to a walker.  The Supreme Court has held that a preliminary injunction is appropriate to grant relief of the "same character as that which may be granted finally."  De Beers Consol. Mines v. U.S., 325 U.S. 212, 220 (1945).  A court may not issue an injunction in "a matter lying wholly outside the issues in the suit."  Id.  A court need not consider claims that were not raised in the complaint. McMichael v. Napa County, 709 F.2d 1268, 1273 n. 4 (9th Cir. 1983).  For these reasons, the undersigned does not consider plaintiff's claims for injunctive relief regarding breathing treatment and access to a walker.

////

////

7

1    Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall appoint

2  a district judge to this action; and

3    IT IS HEREBY RECOMMENDED that plaintiff's motions for injunctive relief

4  (Dkt. Nos. 28 and 35) be denied.

5    These findings and recommendations are submitted to the United States District Judge

6  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

7  after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

10  objections shall be filed and served within fourteen days after service of the objections.  The

11  parties are advised that failure to file objections within the specified time may waive the right to

12  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED:  July 25, 2012

14

15                                        _____

16                                        KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE
17  ram45.inj(2)

18

19

20

21

22

23

24

25

26